(80 App. Div. 487.)

FREEDMAN et al. v. OPPENHEIM.

(Supreme Court, Appellate Division, Second Department. March 26, 1903.)

1. POWER OF ATTORNEY—ACKNOWLEDGMENT—SUFFICIENCY.
    An acknowledgment to a power of attorney, in which the notary certifies, "Personally appeared before me the within-named C., to me known and acknowledged the within letter of attorney," is defective because not showing that the notary knew C. to be the person described in and executing the power.

2. FOREIGN POWER OF ATTORNEY — ACKNOWLEDGMENT BY NOTARY—CERTIFICATE OF AUTHENTICATION.

A certificate of authentication attached to a power of attorney made and acknowledged in Virginia, in which the clerk of the court, instead of certifying that he is well acquainted with the notary's handwriting, and verily believes his signature genuine, merely certifies that the notary is duly commissioned and qualified, and that full faith and credit are due his acts, is defective.

3. EXCHANGE OF REAL ESTATE—ACCEPTANCE OF TITLE—DEFECTIVE ACKNOWLEDGMENT OF MUNIMENT—EFFECT.

In an action to compel the completion of an exchange of real estate, there was no proof, aside from the record, that a power of attorney, constituting a muniment in the alleged defective title, was ever executed by the owner of the realty; nor was there any proof of his signature, or that of any witness to the document. The instrument was not produced, nor was the fact of its physical existence established. *Held,* that a defect in the acknowledgment of the power was fatal to the title; the contention that, notwithstanding such defect, the instrument was good between the parties, not being tenable, in view of the condition of the evidence.

4. SAME—ADVERSE POSSESSION—SUFFICIENCY.

Code Civ. Proc. § 369, provides that, to constitute title by adverse possession, there must be an entry under claim of title, founded on a written instrument, exclusive of any other right; and section 370 provides that land is deemed to have been possessed and occupied where it has been protected by a substantial inclosure. It appeared that land had been fenced since 1858, but who fenced it was not disclosed. There was no house on the property, but a cellar had been dug, and fruit trees were growing. One owner had cut bushes, and had them burned and the place cleaned up, and the taxes had been regularly paid. *Held* not sufficient to create title by adverse possession, it not appearing that entry was had under a written instrument under a claim of title exclusive of any other right.

Appeal from Special Term, Kings County.

Action by Betsie Freedman and another against William Oppenheim. From a judgment for plaintiffs, defendant appeals. Reversed.

Argued before BARTLETT, JENKS, WOODWARD, HIRSCHBERG, and HOOKER, JJ.

Geo. Edwin Joseph, for appellant.
Hugo Hirsh, for respondents.

HIRSCHBERG, J.   The parties engaged, in writing, to exchange real estate; the plaintiffs to deed to the defendant certain property in Staten Island for the defendant's property in the borough of Brooklyn.   The defendant refused to take the plaintiffs' title, but has been required to do so by the judgment, and the only question presented on the appeal is whether the title is such as a court of equity will compel a purchaser to take.

James M. Cruser, a resident of the state of Virginia, appears to have been the owner of the premises in 1845, and by the record title it is purported that he deeded it in that year through an attorney in fact to Joseph Cruso.   There is a power of attorney recorded to Edwin R.

¶ 2. See Acknowledgment, vol. 1, Cent. Dig. § 249.

L'Amoureux, dated June 2, 1845. The notary certifies in the acknowledgment to that instrument that on the day named "personally appeared before me the within-named James Monroe Cruser, to me known, and acknowledged the above letter of attorney to be his act and deed." There was no certificate to the effect that the notary knew the person who so appeared before him to be the person described in, and who executed, the power of attorney. The certificate is the same as the one which was condemned in Paolillo v. Faber, 56 App. Div. 241, 67 N. Y. Supp. 638. In that case, citing Fryer v. Rockefeller, 63 N. Y. 268, and Irving v. Campbell, 121 N. Y. 356, 24 N. E. 821, 8 L. R. A. 620, the court said (page 242, 56 App. Div., and page 639, 67 N. Y. Supp.) that the certificate "was defective, in that the notary taking the acknowledgment did not state that the person who appeared before him was known to him to be the person described in, and who executed, the power of attorney. Such information must be contained in the certificate of acknowledgment, and, unless it is, the paper is not entitled to be recorded." It was accordingly held that the court would not compel specific performance of a contract for the purchase of real estate, the title to which had been acquired by the vendor through a deed executed under such power of attorney.

There is also a defect in the certificate of authentication attached to the alleged power of attorney in this case. The certificate is executed by the clerk of the Hustings Court of the city of Norfolk, Va., who, however, instead of certifying, in accordance with the statute, that he is well acquainted with the handwriting of the notary, and verily believes his signature to the acknowledgment is genuine, merely certifies that said notary is "duly commissioned and qualified, and that full faith and credit are due to all his acts as such."

The learned Trial Justice very properly rejected the title in so far as it depended upon the deed to Cruso purporting to be executed by virtue of this power of attorney, but found that the plaintiffs had established a marketable title by adverse possession. Before examining into the soundness of that finding, it is proper to notice a claim made by the learned counsel for the respondents, to the effect that the object of the acknowledgment being only to have the paper recorded, and the object of recording being only to give constructive notice, so as to cut off subsequent purchasers in good faith and for value, the power of attorney, however defectively acknowledged, is still good as between the parties to it, and should be regarded as sufficient in this action, in the absence of subsequent purchasers, lienors, or claimants. It is a sufficient answer to this contention that there is no proof in the case that a power of attorney was ever executed by James Munroe Cruser, the owner in 1845 of the property in question. There was no proof of his signature, or of that of any witness to the document. The power of attorney was not produced, nor the fact of its physical existence at any time established by any competent evidence. The record was concededly insufficient as evidence, and none other was offered. There was therefore nothing before the court upon which a finding could be based which would serve to make the power of attorney good and binding upon any one or for any purpose, or of any value in the

controversy, excepting as connected with and the foundation of the deed, as a written basis for a claim of title.

On the question of the sufficiency of the proof of adverse possession I have reached the conclusion that the proof falls short of the requirements embodied in the more recent decisions of the Court of Appeals, and that therefore the plaintiffs should not be permitted to compel the defendant to take the property. By section 369 of the Code of Civil Procedure it is provided, in substance, that to constitute title by adverse possession there must be an entry into the possession under a claim of title founded upon a written instrument, exclusive of any other right, and a continuance of such possession under the same claim for 20 years. By section 370 it is provided that, for the purpose of constituting such adverse possession, "land is deemed to have been possessed and occupied" where it has been protected by a substantial inclosure. There was evidence that the land in question had been protected by a substantial inclosure since at least 1858, the witness testifying, "It was fenced in at that time." Who fenced it in is not disclosed, and the statement may either mean that it was done in 1858, or had already been done at that time. There has been no house upon the property, but a cellar has been dug, and fruit trees were growing; one of the grantees under the Cruser deed at one time contemplated having the property laid out in lots, cut the bushes, had them burned, and the place cleaned up; and the taxes have been regularly paid. This is substantially all the evidence; there being none to the effect that Joseph Cruso ever entered into possession of the property under the deed in question, under a claim of title exclusive of any other right, or that any subsequent claimant or occupant did so under that or any other deed.

It must be conceded that the property has been held in undisturbed possession for considerably more than 20 years under a deed or deeds purporting to convey the title. But it was held in Kneller v. Lang, 137 N. Y. 589, 33 N. E. 555, that the fact that a person was in undisturbed possession of land for 20 years and upwards under a deed is not sufficient to establish title by adverse possession. The court said (page 591, 137 N. Y., and page 557, 33 N. E.):

"The fact stated that Gauchat and his grantees 'were in the undisturbed possession of the land for twenty years and upwards' does not show that the possession was adverse. It does not necessarily follow therefrom that the entry by Gauchat and his grantees was under the deeds mentioned, exclusive of any other right, and this is essential to constitute an adverse holding under a written conveyance which will divest the title of the true owner after twenty years. Code Civ. Proc. § 369. It is not unlikely that there was an adverse possession in fact, as against Sheldon or his heirs, for the requisite period. But the court cannot draw this inference from the fact stated."

In the case of Heller v. Cohen, 154 N. Y. 299, 48 N. E. 527, it was held that undisturbed possession of land by trustees for the statutory period was not sufficient to create title. Judge Martin said (page 311, 154 N. Y., and page 530, 48 N. E.):

"To establish title by adverse possession, it must be shown that the person holding the possession did so in open hostility to the rights of the true

81 N.Y.S.—8

owner. The presumption is that the possession is in subordination to the actual title. Doherty v. Matsell, 119 N. Y. 646 [23 N. E. 994]. It is not sufficient that he has merely held the possession undisturbed for the period of twenty years. The fact that the plaintiffs and their predecessor in title were in the undisturbed possession of the land for twenty years and upwards does not show that the possession was adverse. It does not necessarily follow therefrom that their entry was, under the deed mentioned, exclusive of any other right; and this was essential to constitute an adverse holding under a written conveyance, which would divest the title of the true owner after twenty years. It may be that there was an adverse possession for the requisite period. But the court cannot draw that inference from the evidence in this case, as the most that can be said to have been established by it is that the plaintiffs' testator was in the undisturbed possession of the premises for a period of more than twenty years. Kneller v. Lang, 137 N. Y. 589 [33 N. E. 555]. The theory upon which the legal title to land may be acquired by one holding it adversely for that period is that it is to be implied because of the acquiescence of the true owner in the hostile claim of title for that time. Baker v. Oakwood, 123 N. Y. 16 [25 N. E. 312, 10 L. R. A. 387]. We think no such implication arises from the proof in this case."

It was also held in that case, on the authority of Irving v. Campbell, supra, and Holly v. Hirsch, 135 N. Y. 590, 32 N. E. 709, that where the defect in the record title can be supplied only by resort to parol evidence, and the title may depend upon questions of fact, a purchaser would not be required to perform his contract. Judge Martin said upon that branch of the case (page 312, 154 N. Y., and page 530, 48 N. E.):

"Moreover, to sustain the plaintiffs' title by adverse possession, the defendant or his grantees would be required to resort to parol evidence, and it may be that it will depend upon an issue of fact as to which some dispute may arise. Under such circumstances, the purchaser ought not to be compelled to take property, the possession of which he may be obliged to defend by litigation, where the title may depend upon a question of fact. Irving v. Campbell, Holly v. Hirsch, supra."

The subject was further considered in the case of Simis v. McElroy, 160 N. Y. 156, 54 N. E. 674, 73 Am. St. Rep. 673. The court said at page 161, 160 N. Y., page 674, 54 N. E., 73 Am. St. Rep. 673:

"It is admitted that, as to a material part of the premises embraced in the contract, the plaintiff had no record title, but she claimed to have good title by adverse possession, and the question presented by this appeal is whether the plaintiff established title in that way so conclusively as to warrant the court in directing a verdict in her favor. It is important to bear in mind that the controversy is not between the party holding or claiming under the record title and the plaintiff claiming by adverse possession, but between the latter and a purchaser by executory contract to recover damages for his refusal to accept a title based entirely on such adverse possession. The holders of the outstanding record title, if any, are not parties to this action, and cannot be bound by the judgment; and hence the defendant, if compelled to accept the deed te dered, might still be obliged to litigate with the true owners the question of title as against them. When the controversy assumes the form of an action of ejectment against the party in possession, by one claiming under title by record, the former is in a stronger position to assert his right than when he is litigating with a stranger who refuses to accept his title. In the former case, adverse possession is evidence of title in the party asserting it. Baker v. Oakwood, 123 N. Y. 16 [25 N. E. 312, 10 L. R. A. 387]. It might well be held to have the same effect in every case, but for the difficulty, if not impossibility, of establishing the fact as against those who are not parties to the action or bound by the

judgment. In such cases it is frequently very difficult for courts to antic-
ipate what the owner of the outstanding title may be able to prove in a
litigation with a party who has taken a title by adverse possession. The
former may be able to prove facts tending to show that what appeared to
be an adverse possession, in a litigation in which he was not heard, is quite
otherwise, and hence this court has frequently refused to compel a pur-
chaser to take a title which he may be called upon to defend by parol proof
of adverse possession. Heller v. Cohen, 154 N. Y. 299 [48 N. E. 527]; Mc-
Pherson v. Schade, 149 N. Y. 16 [43 N. E. 527]; Holly v. Hirsch, 135 N. Y.
590 [32 N. E. 709]; Irving v. Campbell, 121 N. Y. 353 [24 N. E. 821, 8 L. R.
A. 620].

"The plaintiff contracted to deliver to the defendant a deed 'containing a
general warranty, and the usual full covenants for the conveying and as-
suring to him the fee simple of the said premises free from all incumbrance.'
The deed tendered did not assure to the defendant the fee simple in the
property, since the plaintiff was obliged to prove her title by adverse pos-
session. It was made out in this action by parol proof, which is open to
change hereafter in any litigation between the defendant and the parties
who have succeeded to the record title. Adverse possession is defined by
the Code (sections 369, 373), and, unless the case made by the plaintiff met
all the conditions prescribed by these sections, she has failed to establish
a breach of the contract on the part of the defendant in refusing to accept
the title tendered."

It is not intended to suggest that specific performance of a contract
to purchase will not be compelled, in a proper case, notwithstanding
the vendor's title rests upon adverse possession. "If there is no dis-
puted question of fact, and the possession has been clearly adverse and
undisturbed for the required period, the title may be sustained."
Heller v. Cohen, 154 N. Y. 311, 48 N. E. 530. And in the First
Department it was practically held by the former General Term in
Abrams v. Rhoner, 44 Hun, 507, that a marketable title founded on
adverse possession existed, where the proof was so clear that the court
should direct a jury to find such title.

The record in this case does not disclose the details of the plaintiffs'
claim of title; no objection having been made to any of the deeds
or to the record title, except as to the power of attorney and the
deed immediately following it. Doubtless the parties to the record
title have for a long period conveyed the property under the claim
of ownership, and successive grantees have most likely entered into
possession under claim of title, founded upon such conveyances, and
exclusive of any other right. That undisturbed possession has been
so held during at least the statutory period cannot be difficult of
proof, but until the proof is made the defendant cannot be lawfully
compelled by the court to perform his contract, however strong the
probability may be that his ownership, if perfected by such perform-
ance, will never be successfully assailed. The judgment should be re-
versed.

Judgment reversed and new trial granted; costs to abide the final award
of costs. All concur.